UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RIVER TERRACE SQUARE, LLC and
RUSSELL SQUARE LLC,

          Plaintiffs,

v.

BI 79, LLC,

          Defendant.
          /

Case No. 2:24-cv-10509

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER DENYING EMERGENCY
MOTION [10] AND GRANTING MOTION TO VACATE [11]**

Plaintiff River Terrace Square sued Defendant BI 79 for an alleged breach of contract and sought quiet title relief and monetary damages in State court. ECF 1-2. Defendant timely removed the case to federal court based on diversity jurisdiction, ECF 1, PgID 3–4, and moved to dismiss the complaint, ECF 4. Plaintiff River Terrace Square timely amended the complaint, ECF 7, and added Plaintiff Russell Square. The amended complaint includes claims that are nearly identical to the original complaint that address a contract between Defendant and Plaintiff Russell Square. *See id.* at 304–06. The crux of the matter concerns Defendant's foreclosure on Plaintiffs' properties. Plaintiff Russell Square filed an emergency motion to extend the redemption period after the foreclosure sale. ECF 10. At the same time, Defendant moved to vacate the State court's injunction that extended the redemption period for the foreclosure on Plaintiff River Terrace Square's property. ECF 11. For

1

the following reasons, the Court will deny the emergency motion and grant the motion to vacate.[1]

## BACKGROUND

Defendant loaned $22.9 million to Plaintiff River Terrace to pay for the construction and renovation of Plaintiff River Terrace's apartment complex in Detroit. ECF 7, PgID 311–411 (Loan Agreement signed by both parties). After Plaintiff River Terrace failed to make required loan payments in 2022, Defendant and Plaintiff River Terrace modified the loan agreement (Modification Agreement) to provide Plaintiff River Terrace "a reasonable opportunity to bring the Loan [i]n [b]alance" before Defendant exercised its remedies. *Id.* at 454–55. As consideration, the Modification Agreement required Plaintiff River Terrace to provide Defendant with a security interest in the Russell Street Property that Plaintiff Russell Square owned. *Id.* at 470. Plaintiff Russell Square is an affiliate of Plaintiff River Terrace and was not a party to the Modification Agreement. *Id.* at 296.

One month after the Modification Agreement, Defendant sent Plaintiff River Terrace a notice of breach (Notice) and alleged two defaults. *Id.* at 505–08. First, Defendant stated that Plaintiff River Terrace "failed to make the full monthly interest payment for the month of January 2023 after the five [] days of when same became due." *Id.* at 506. Second, Defendant declared that Plaintiff River Terrace

---

[1] The parties responded to the motions. ECF 15 (Defendant's response to Plaintiff River Terrace's emergency motion); ECF 17 (Plaintiffs' response to Defendant's motion to vacate). Because the briefing is thorough and because the parties requested expedited rulings on the motions, the Court will resolve the motions based on the briefing and will not hold a hearing. *See* L.R. 7.1(f)(2).

"failed to provide additional documentation necessary to secure [Defendant's] interest in the properties listed on Exhibit A of the Modification Agreement." *Id.* Defendant explained that each failure amounted to an "Event of Default" as defined by the Loan Agreement and the Modification Agreement. *Id.* Defendant informed Plaintiff River Terrace that it "hereby exercises its right to accelerate [Plaintiff's] obligation to repay the Loan and declare the entire principal amount, all accrued interest, and all other amounts owed under the Loan Documents due and immediately payable, without further notice." *Id.* at 507. Last, Defendant advised: "Please note that no notice of a default is required under the Loan Documents." *Id.*

Defendant foreclosed on Plaintiff River Terrace's property on August 17, 2023. *Id.* at 299–300, 517–25 (sheriff's deed evidencing the foreclosure sale). The redemption date—the last date that Plaintiff River Terrace could redeem the property—was February 17, 2024. *Id.* at 524. Defendant also foreclosed on Plaintiff Russell Square's property on October 19, 2023. *Id.* at 300; 527–34 (sheriff's deed evidencing the foreclosure sale). The redemption date for the Russell Square property is April 19, 2024. *Id.* at 534. Title for the properties will not transfer to Defendant until the redemption period expires.

Rather than attempting to redeem either property, Plaintiff River Terrace waited until the eve of the statutory redemption period and filed suit against Defendant in State court. ECF 1-2 (summons and complaint). Plaintiff River Terrace also moved to extend the redemption period on the River Terrace property. ECF 1-3, PgID 203–09 (emergency motion to extend). Plaintiff River Terrace argued that there

3

was no "Event of Default" that warranted the foreclosure, thus making the sheriff's deed invalid. *Id.* The State court granted the motion and stayed the redemption period indefinitely before Defendant had an opportunity to submit its brief opposing the motion. ECF 11, PgID 586; *see* ECF 1-4, PgID 213. Defendant then removed the action to federal court, ECF 1, and moved to vacate the State court's order extending the redemption period, ECF 11. Plaintiff Russell Square, meanwhile, filed an emergency motion for a preliminary injunction to extend the redemption period on the Russell Square property for the same reasons argued in the State court motion. ECF 10.

## LEGAL STANDARD

Federal Rule of Civil Procedure 65(b) governs preliminary injunctions. A "preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original) (quotation omitted). "Four factors determine when a court should grant a preliminary injunction: (1) whether the party moving for the injunction is facing immediate, irreparable harm, (2) the likelihood that the movant will succeed on the merits, (3) the balance of the equities, and (4) the public interest." *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 327 (6th Cir. 2019) (citations omitted).

Under Michigan law, a mortgagor has six months to redeem his property after a sheriff's sale. Mich. Comp. Laws § 600.3240(8). Once the redemption period expires, full legal title transfers to the purchaser, and the borrower loses the right to possess

4

the property. *Powers v. Bank of Am., N.A.*, 63 F. Supp. 3d 747, 754 (E.D. Mich. 2014) (citation omitted). Yet "[t]here is a judicially-created exception to the redemption rule" which allows courts to "extend the statutory redemption period where a party clearly shows fraud or irregularities in the foreclosure process that actually prejudiced the mortgagor in preserving his or her interest in the property." *Jarbo v. Bank of New York Mellon*, 587 Fed. App'x 287, 289 (6th Cir. 2014). Plaintiff's burden in demonstrating that the statutory foreclosure should be set aside is high. *See id.*

## DISCUSSION

I. <u>Motion to Extend Redemption Period for Russell Square Property</u>

Plaintiff Russell Square filed an emergency motion to extend the redemption period on its property, which will expire on April 19, 2024. ECF 10.[2] Plaintiff Russell Square argued that the four preliminary injunction factors "weigh heavily in favor of enjoining the expiration of the redemption period." *Id.* at 565. Not so. The Court will deny the motion because the four factors strongly favor denial of an "extraordinary and drastic remedy." *Mazurek*, 520 U.S. at 972.

First, although Plaintiff Russell Square faces "immediate harm," the harm is not irreparable. Once the redemption period expires, title to the Russell Square property will pass to Defendant. Plaintiff Russell Square is therefore correct that it

---

[2] Confusingly, Plaintiff Russell Square stated that its "request for an extension of a redemption period for the pendency of litigation is a matter of equity and not injunctive relief." ECF 10, PgID 563. But Plaintiff's request to extend the redemption period requires the Court to issue an order enjoining the title transfer—which constitutes a preliminary injunction. And a preliminary injunction is a form of equitable relief.

5

will "lose all interest in the property before [it] could determine whether the foreclosure was improper." ECF 10, PgID 565 (citation omitted). But if Plaintiff Russell Square clearly shows that it was prejudiced by fraud or irregularities in the foreclosure process—meaning, if Plaintiff Russell Square succeeds on the merits of the complaint—Plaintiff Russell Square may obtain equitable relief. After all, Plaintiff Russell Square's complaint seeks quiet title as a remedy to the allegedly void sheriff's deed. *See* ECF 7, PgID 304, 306. Plaintiff Russell Square therefore will not be irreparably harmed if it turns out that the foreclosure was improper.

Second, Plaintiff Russell Square's likelihood of success on the merits is low. Plaintiff Russell Square argued that "it can clearly show irregularity in the foreclosure procedure based on Defendant's failure to comply with the Modification Agreement's notice and cure provision prior to foreclosure." ECF 10, PgID 565. But the pleadings and supporting documents support a contrary showing.

Defendant began the process of foreclosure by advertisement, a method of nonjudicial foreclosure permitted under Michigan law, in July 2023. ECF 11, PgID 583. There are four prerequisites to foreclose by advertisement:

> (a) A default in a condition of the mortgage has occurred, by which the power to sell became operative;
> (b) An action or proceeding has not been instituted, at law, to recover the debt secured by the mortgage or any part of the mortgage or, if an action or proceeding has been instituted, either the action or proceeding has been discontinued or an execution on a judgment rendered in the action or proceeding has been returned unsatisfied, in whole or in part;
> (c) The mortgage containing the power of sale has been properly recorded; and
> (d) The party foreclosing the mortgage is either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage.

6

Mich. Comp. Laws § 600.3204 (alterations omitted).

Plaintiff Russell Square claimed that the foreclosure was irregular because it "occurred before the powers of sale were operative." ECF 10, PgID 556. In other words, Plaintiff Russell Square argued that it did not default on the mortgage and therefore could not exercise its contractual right to foreclose. *See id.* at PgID 556–57; *see also Powers*, 63 F. Supp. 3d at 753 ("A mortgagee establishes a clear showing of irregularity if a bank forecloses on a mortgagee that is not in default under the terms of the agreement or a subsequent modification."). To be sure, Plaintiff Russell Square is correct that Defendant's power of sale as to the Russell Square property became operative "in the event of an occurrence of an Event of Default." ECF 10, PgID 556–57; *see* ECF 7, PgID 486–88 (Russell Street mortgage agreement sections defining default and remedies). But Plaintiff Russell Square misinterpreted the Events of Default under the Modification Agreement.

Plaintiff Russell Square argued that Defendant erred by referencing "the Loan Agreement for the Event of Default rather than Section 6.1 of the Modification Agreement." ECF 7, PgID 297. The Modification Agreement, however, supplemented and did not supplant the Loan Agreement. *Id.* at 456 ("Borrower and Guarantor further acknowledge and agree that all terms, conditions, and provisions of the Loan Documents . . . continue in full force and effect and remain unaffected and unchanged except as expressly and specifically modified by this Agreement.").

Plaintiff Russell Square also argued that there "was no Event of Default because Defendant failed to provide an opportunity to cure as required under Section

7

6.1 of the Modification Agreement." ECF 10, PgID 557. Defendant, however, argued that it was not required to provide an opportunity to cure. ECF 15, PgID 1043. Only the first three out of eleven Events of Default in the Modification Agreement required a cure period. ECF 7, PgID 464–65. One of the Events of Default fully incorporated "any Event of Default (as defined in the Loan Agreement)" and did not require a cure period. *Id*. And the Loan Agreement's Events of Default did not require a cure period. *Id.* at 359. Defendant's Notice of Default clearly stated that Plaintiff Russell Square defaulted under the Modification Agreement, in part, by defaulting under the Loan Agreement—that is, by failing to make timely principal and interest payments. *Id.* at 505–06. And even if Plaintiff Russell Square defaulted under a different Event of Default that required a cure period, Defendant argued that the right to cure was self-executing. ECF 15, PgID 1044. Indeed, nothing in the Modification Agreement required Defendant to notify Plaintiff Russell Square of its right to cure after sending the notice of default. In theory, Plaintiff Russell Square had a cure period of more than ten days because Defendant arguably did not begin exercising its remedies until it sued Plaintiff River Terrace in April 2023 or until it began foreclosure by advertisement in July 2023. *See* ECF 7, PgID 298–99. It therefore is unlikely, based on the pleadings and attachments, that Plaintiff Russell Square could succeed in demonstrating that the foreclosure was irregular.

Plaintiff Russell Square argued in the alternative that the Russell Square mortgage was void because Plaintiff Russell Square did not satisfy conditions precedent to the Modification Agreement. ECF 10, PgID 565. In other words, Plaintiff

8

Russell Square argued that its own breach of the Modification Agreement prevented Defendant from exercising its foreclosure rights under the Modification Agreement. Putting aside the bad faith, self-interested nature of the argument, Plaintiff Russell Square cannot benefit from its own breach when Defendant performed its contractual obligations. Defendant agreed to not exercise its remedies after Plaintiff River Terrace breached the Loan Agreement. *See* ECF 7, PgID 454–55. In exchange, Plaintiff Russell Square agreed to mortgage the Russell Square property, and the parties executed a mortgage agreement as to the Russell Square property to that effect. *Id.* at 472–500 (Russell Square mortgage). Plaintiff Russell Square's failure to fulfill obligations tangential to the Modification Agreement did not void the properly executed Russell Square mortgage. Under Plaintiff Russell Square's alternative theory, it is also unlikely that Plaintiff Russell Square will succeed in demonstrating the foreclosure was irregular.

Third, the balance of the equities favors allowing the title to transfer. Plaintiff Russell Square argued that "the risk of losing all interest in the property outweighs Defendant's delay in completing the sale." ECF 10, PgID 565. But Plaintiff Russell Square's harm is self-inflicted. It simply did not pay its debt. And Plaintiff Russell Square's failure to make payments on the loan led to the foreclosure sale. Plaintiff Russell Square had five months to cure the default before the foreclosure sale, and then another six months to redeem the property. Defendant is entitled to exercise its contractual remedies after Plaintiff Russel Square failed to make payments on a $22 million loan.

9

Fourth, the public interest would be better served by allowing title to transfer on the expiration date of the redemption period. Plaintiff Russell Square's only public interest argument assumed that it would succeed on the merits. ECF 10, PgID 566 ("[I]t is within the public interest to ensure that litigants are able to obtain a determination on the merits of their claims without losing the rights that a success on the merits would preserve.") (citation omitted). But, as explained above, Plaintiff Russell Square's likelihood of success on the merits is low and Plaintiff Russell Square's later success, if any, would still result in preservation of its property interests. The public interest would better be served by allowing title to transfer because borrowers should be on notice that loan defaults will likely result in procedurally proper foreclosure. In other words, society should expect that lenders will exercise their contractual and statutory remedies after borrowers fail to make payments.

In sum, the four preliminary injunction factors do not favor extending the six-month statutory redemption period. The Court will therefore deny Plaintiff Russell Square's emergency motion.

II.     Motion to Vacate State Court Order

Defendant also moved to vacate the State court order that indefinitely extended the foreclosure redemption period as to the River Terrace property. ECF 11; *see* ECF 1-4, PgID 213 (State court order). The six-month statutory redemption period for the River Terrace property expired on February 17, 2024. ECF 7, PgID 524. Defendant argued that the State court erroneously enjoined title transfer by

extending the statutory redemption period indefinitely despite Plaintiff River Terrace's low likelihood of success on the merits. *See* ECF 11, PgID 589.

The Court may modify or vacate the State court's orders issued before removal. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers Local No. 70 of Alameda County*, 415 U.S. 423, 435–36 (1974); 28 U.S.C. § 1450 ("All injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court."). Based on the weight of the four preliminary injunction factors, the Court will vacate the State court's order.

First, the harm in allowing title to transfer is not irreparable because, as explained in the analysis above with respect to the Russell Street property, Plaintiff River Terrace may obtain equitable relief if it demonstrates fraud or irregularity in the foreclosure process at the end of litigation. Similarly, the above analyses regarding likelihood of success on the merits and the balance of equities applies to Plaintiff River Terrace. The second and third factors therefore weigh in favor of vacating the State court's order.

As to the fourth factor, Defendant argued that the residents in and community surrounding the River Terrace property would benefit from title transfer. ECF 11, PgID 599. Indeed, Defendant alleged that the River Terrace property is in a state of disrepair, has "thousands of dollars in unpaid assessments by the City of Detroit Building, Safety and Environmental Department," and received four separate correction orders from the City of Detroit due to "[n]umerous building code violations"

11

which remain uncorrected. *Id.* Plaintiffs denied "Defendant's bald allegations" and argued that Defendant exercised its "right to choose a property manager . . . and to give direction to the property manager" so any alleged mismanagement is the Defendant's responsibility. ECF 17, PgID 1502. Because of the parties' conflicting descriptions about the state of the River Terrace property, the Court cannot determine whether the public interest would better be served under Plaintiff or Defendant's ownership of the River Terrace property. The Court, however, finds that the fourth factor weighs in favor of allowing title to transfer to Defendant because, as explained in the analysis above, it is in the public interest to enforce contractual rights and remedies.

The Court will therefore vacate the State court's order indefinitely extending the redemption period for the River Terrace property because the Plaintiff River Terrace did not demonstrate that it is entitled to a preliminary injunction of the foreclosure process.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that the emergency motion to extend the redemption period [10] is **DENIED**.

**IT IS FURTHER ORDERED** that the motion to vacate the State court

injunction extending the redemption period [11] is **GRANTED**.

**SO ORDERED.**

s/ Stephen J. Murphy, III  
STEPHEN J. MURPHY, III  
United States District Judge

Dated: April 22, 2024